UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| RANDY TRACY SHAW, <br> Plaintiff | CIVIL ACTION NO. 1:16-CV-1777-P |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CORRECTIONAL OFFICER <br> BRELAN, ET AL., <br> Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Pro se Plaintiff Randy Tracy Shaw ("Shaw") (#11253-007) filed a complaint in the Eastern District of Louisiana under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics.[1] The case was transferred to this Court, and Shaw was granted leave to proceed *in forma pauperis*. (Docs. 5, 11). Shaw is an inmate in the custody of the Federal Bureau of Prisons ("BOP"), incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"). Shaw complains that he was wrongfully convicted of a disciplinary violation when he was housed at the United States Penitentiary in Pollock, Louisiana ("USP-Pollock"). Shaw also claims he was transferred in retaliation for pursuing administrative remedies.

I. Background

Shaw alleges that, while incarcerated at USP-Pollock, he was assaulted by several inmates that were allowed in his housing unit. Shaw ran from the inmates,

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. § 1983.

and Officer Cain followed. Officer Cain placed Shaw on the ground. (Doc. 8, pp. 4-5). The inmates then stabbed Shaw and Officer Cain with homemade weapons. Shaw was written up for fighting and assault on staff. Shaw was convicted and transferred to USP-Lewisburg.

II.     Law and Analysis

    A.     Shaw's complaint is subject to screening under §§ 1915(e)(2) and 1915A.

Shaw is a prisoner who has been allowed to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, Shaw's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. See Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, Shaw's complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for sua sponte dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

B. <u>Shaw fails to state a claim regarding his disciplinary conviction and transfer.</u>

As a result of his disciplinary conviction, Shaw was sanctioned to 45 days loss of visitation, 90 days loss of commissary, seven days of disciplinary segregation, and a referral to a special management unit. (Doc. 13, p. 2). To establish a due process violation, a plaintiff must show that he was deprived of a liberty interest protected by the Constitution or other federal law. <u>Sandin v. Conner</u>, 515 U.S. 472, 483–84 (1995).[2] A prisoner's constitutionally protected liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484 (internal citations omitted).

The sanctions imposed on Shaw do not implicate a liberty interest protected by the Due Process Clause. <u>See</u> <u>Sandin</u>, 515 U.S. at 485–86 (finding no liberty interest protecting against a 30–day period of disciplinary segregation); <u>Oser v. Pollock</u>, 547 F. App'x 458 (5th Cir. 2013) (placement in any SHU or SMU after the expiration of prisoner's disciplinary sentence did not impose any atypical or significant hardship in relation to the ordinary incidents of prison life); <u>Malchi v. Thaler</u>, 211 F.3d 953, 958 (5th Cir. 2000) (30–day commissary and cell restrictions did not implicate the Due Process Clause); <u>Berry v. Brady</u>, 192 F.3d 504, 508 (5th Cir. 1999) (prisoners

---

[2] While <u>Sandin</u> addressed state-created liberty interests under the Fourteenth Amendment, its reasoning applies equally to Fifth Amendment due process claims brought by federal prisoners pursuant to <u>Bivens</u>. <u>See</u> <u>Crowder v. True</u>, 74 F.3d 812, 814–15 (7th Cir. 1996).

3

have no constitutional right to visitation privileges, and restrictions of those privileges do not implicate any due process concerns); Martin v. Scott, 156 F.3d 578, 579–580 & n. 1 (5th Cir. 1998) (loss of visitation and commissary privileges do not deprive the prisoner of a constitutionally cognizable liberty interest); Robinson v. Norwood, 535 F. App'x 81, 84 (3d Cir. 2013) (placement in the SMU at USP-Lewisburg did not implicate due process of law).

Although the Fifth Circuit has found that segregated confinement may be sufficiently "atypical" to implicate a due process liberty interest when a plaintiff was kept on lockdown status for 30 years, see Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003), Shaw has not alleged such extraordinary circumstances sufficient to state a constitutional violation.

Moreover, "a prison inmate does not have a protectable liberty or property interest in his custodial classification," and does not have a constitutional right to be housed in a particular facility. See Wolters v. Fed. Bureau of Prisons, 352 F. App'x 926, 928 (5th Cir. 2009) (citing Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)). Classification of inmates is an administrative function, and prison officials can change an inmate's classification for almost any reason or no reason at all. See Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989); Wolters v. Federal Bureau of Prisons, 352 Fed. Appx. 926, 928 (5th Cir. 2009); Mendoza v. Lynaugh, 989 F.2d 191, 194 n. 4 (5th Cir. 1993).

Shaw argues that his transfer to the special management facility at USP-Lewisburg was arranged as retaliation for challenging his disciplinary conviction. "To

4

prevail on a claim of retaliation, a prisoner must establish: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (internal quotation marks and citation omitted). "Prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." Zebrowski v. U.S. Fed. Bureau of Prisons, 558 F. App'x 355, 358 (5th Cir. 2014) (citing Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)). To show retaliatory intent, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." Id. (internal quotation marks and citation omitted).

Shaw provides that he was referred to a special management unit as part of the disciplinary sanction imposed for assaulting a staff member, not for challenging his conviction. (Doc. 13, p. 2). Shaw has not presented allegations of Defendants' intent to retaliate against him for filing administrative remedies as opposed to transferring him because of the assault conviction. Shaw's claim that his transfer was retaliatory is conclusory.

III. Conclusion

For the forgoing reasons, **IT IS RECOMMENDED** that Shaw's complaint be **DENIED** and **DISMISSED** with prejudice under § 1915(e)(2)(b) and § 1915A.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with

the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this <u>  1st  </u> day of May, 2017.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge